57 F.3d 1077
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 William E. GREEN, Plaintiff-Appellant,
v.
Sheila E. WIDNALL, Secretary of the Air Force, Defendant-Appellee.
 No. 93-17145.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 13, 1995.
Decided May 25, 1995.
 
 Before: TANG, SCHROEDER, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 William E. Green, an African-American civil service engineer at McClellan Air Force Base, appeals the district court's summary judgment in favor of the Secretary of the Air Force ("the government"). The district court ruled it had no subject matter jurisdiction over Green's Title VII race discrimination claims because Green failed to exhaust his administrative remedies. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 DISCUSSION
 
 3
 The existence of subject-matter jurisdiction under Title VII is a question of law reviewable de novo, as is the question of whether a federal employee has exhausted his administrative remedies. Vinieratos v. United States, Dep't of Air Force, 939 F.2d 762, 767-68 (9th Cir. 1991).
 
 
 4
 Paragraphs 4(A) - (I) of the Amended Complaint
 
 
 5
 The district court found that Green failed to exhaust his administrative remedies for the claims recited in Paragraphs 4(A) - (I) of his complaint because he did not cooperate with Equal Employment Opportunity ("EEO") counselors Ted Surratt and James Brown when they attempted to investigate his complaint, and that he failed to provide information specific enough to allow them to conduct a meaningful investigation of his allegations.
 
 
 6
 A federal employee must exhaust his administrative remedies before filing a Title VII discrimination suit in federal court. Vinieratos, 939 F.2d at 767-68, Ong v. Cleland, 642 F.2d 316, 318 (9th Cir. 1981). To meet the exhaustion requirement, a claimant must cooperate with EEO investigators and provide information that is sufficiently specific to allow for meaningful investigation of the claimant's case. Failure to provide specific information on discriminatory incidents is viewed as an obstruction of the EEO process. See Johnson v. Bergland, 614 F.2d 415, 417 (5th Cir. 1980), cited in Vinieratos, 939 F.2d at 771. See also Edwards v. Dep't of Army, 708 F.2d 1344, 1347 (8th Cir. 1993). (complainant who travelled the entire administrative route without ever making concrete allegation failed to exhaust his administrative remedies); Jordan v. United States, 522 F.2d 1128, 1131-32 (8th Cir. 1975) (refusal to disclose facts serving as basis of complaint was failure to exhaust administrative remedies).
 
 
 7
 After a review of the record, we agree that Green did not cooperate and failed to provide the EEO counselors with information specific enough for them to conduct an investigation. Green failed to appear for several appointments without notice and refused to provide Surratt, a non-engineer, with an understandable explanation of the performance evaluation. He did not fill out a self-evaluation form to enable Surratt to investigate the performance appraisal. Surratt could not, as a result, complete an investigation into Green's allegations.
 
 
 8
 On several occasions, Green provided the EEO counselor with information regarding his claims. However, the information consisted of generalized allegations. Green's August 26, 1991 letter to Colin Powell requested an investigation of the "continuous harassment/retaliation" he allegedly suffered at the hands of his supervisors and cited a poor performance appraisal, given on July 31, 1991.
 
 
 9
 His October 10, 1991 handwritten note to Surratt stated that A. Stellhorn, his supervisor, had predetermined the outcome of Green's July 31, 1991 performance appraisal and had accused Green of drug use:
 
 
 10
 Mr. Stillhorn [sic] (MS) used guile and deceitful craft to develop the situation he outlined in the Performance Elements under Evaluation and Substantiation of Rating -- Form 860A given to W. Green, 31 July '91. That is, he had a desired outcome beforehand, and over the months leading up to the evaluation cunningly crafted events to give the appearance he wanted.
 
 
 11
 The prevailing situation in CE enabled MS to make charges of a ridiculous nature against me.
 
 Such as:
 
 12
 .. drug use ...
 
 
 13
 .. abnormal behavior -- different from the other blacks he has known ...
 
 
 14
 Although he provided a date for the performance appraisal, Green did not identify which portion he was contesting nor did he describe how Stellhorn had manipulated events to achieve a desired outcome. As to the drug use accusation, Green failed to provide dates and background information.[1] There was insufficient specificity to allow for a meaningful investigation of the allegations.
 
 
 15
 Green's November 21, 1991 memorandum with four attachments also failed to provide specific information. The attachments included his October 10, 1991 note to Surratt, a copy of the July 1991 performance evaluation, a letter to General M.D. Pavich requesting investigation of Green's complaint, and a copy of a 90-day Warning of Unsatisfactory Performance dated August 26, 1991.
 
 
 16
 The note accompanying the four attachments stated,
 
 
 17
 The principle [sic] allegation is a continued harassment/retaliation (H/R) by various authorities at McClellan AFB over the majority of the aggrieved civil service career. The H/R has been unrelenting and has manifested itself in:
 
 
 18
 a. Denial of promotions
 
 
 19
 b. Destruction of the aggrieved career in the civil service
 
 
 20
 c. Harassment -- physical and psychological
 
 
 21
 d. Humiliation -- in daily activities
 
 
 22
 The letter to General Pavich provided some information:
 
 
 23
 This complaint is in regards to ... violation of my right of privacy in an attempt to humiliate me in front of my co-workers, 19 and 20 Sep 91.
 
 
 24
 However, Green did not explain how Stellhorn and "others yet to be specified" violated his privacy rights.
 
 
 25
 Green's formal discrimination complaint, filed March 25, 1992, contained the same generalized allegations he had previously asserted. Finally, Green's May 13, 1992 letter to Brown, submitted with an attachment from his formal EEO complaint, identified previous harassment complaints filed by Green, as well as incidents occurring in April 1990, August-September 1990, and November 1990 that Green asserted as examples of harassment he suffered. The materials are insufficient to provide clarification and mentioned acts that were irrelevant for purposes of investigating the complaint.[2]
 
 
 26
 The record reveals a history of frustrated attempts to gain Green's cooperation in the EEO investigation. In particular, he missed several appointments with no excuse. For example, during the first week of October 1991, Surratt made several attempts to contact Green. When the two finally met on October 10, Green provided only general information. Surratt then set up an appointment to meet one week later, on October 16, 1991. Surratt rescheduled the appointment for October 22, 1991. However, Green rescheduled three times, so the two did not meet again until almost one month later. When Green arrived at Surratt's office on November 14, 1991, he indicated that he did not have time to discuss his complaint because he had to exercise. In addition to the missed appointments, Green refused to provide a layperson's explanation of his performance evaluation, and he did not complete a self-evaluation to point out the inaccuracies of the performance evaluation.
 
 
 27
 Green's failure to cooperate with EEO officials ultimately led to the cancellation of his uninvestigated claims. Whatever the reason or reasons for the failure to communicate, Green failed to exhaust his administrative remedies, and the district court correctly ruled it had no jurisdiction over Green's Title VII claims.
 
 
 28
 Paragraphs 4(J) and (K) of the Amended Complaint
 
 
 29
 The district court dismissed the claims described in paragraphs 4(J) and (K) because Green had not raised them in his EEO complaint; therefore, they had not been processed administratively. Failure to raise a Title VII issue administratively will preclude its presentation in federal court. Ong, 642 F.2d at 320. Green failed to exhaust his administrative remedies for the claims in Paragraphs 4(J) and (K) because he did not assert them administratively. Instead, he merely amended his federal complaint to add these claims. Thus, the two claims were not investigated through the Air Force's EEO process. Green failed to exhaust his administrative remedies for the claims in Paragraphs 4(J) and (K).
 
 CONCLUSION
 
 30
 The EEO process may be daunting for many federal employees because the initial investigations and conciliation efforts are conducted in-house by agency officials. Nonetheless, employees who complain of Title VII violations must cooperate with intra-agency EEO officials so that the agency can remedy the situation before any outside court action is needed. If conciliation is not achieved through the administrative process, the employee has a right to file suit in federal court.
 
 
 31
 Because Green failed to cooperate fully with the EEO investigation of his race discrimination claims, he did not exhaust his administrative remedies for the claims recited in paragraphs 4(A) - (I) of his complaint. Therefore, we AFFIRM the district court's dismissal of these claims for lack of jurisdiction. We also AFFIRM the district court's dismissal without prejudice of the claims in paragraphs (J) and (K) of the amended complaint.[3]
 
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Green asserts that he and Surratt met on October 10, 1991 and that Green brought with him his performance rating appraisals and project folders related to the appraisals. He attempted to explain the performance appraisals; however, Surratt did not understand Green's technical explanations and suggested that Green write up the explanations so that a non-engineer could understand them. Although Green replied generally that he did not think this would be possible, we see no reason why he could not have explained the technical aspects of the performance appraisals so that Surratt, or we on review, could understand them
 
 
 [2]
 The more specific information provided by Green was relevant only to an EEO complaint that had already been resolved by the EEOC on June 6, 1990. Green did not timely appeal the EEOC's decision. Therefore, Green's references to events that occurred before the July 31, 1991 performance appraisal are irrelevant to this appeal
 
 
 [3]
 The government has agreed to waive any statutory time limitations for filing the claims in paragraphs (J) and (K) administratively